**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| SHELLY OBENCHAIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:20-CV-168-JVB-JPK |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation on the Commissioner's

Renewed Motion seeking dismissal pursuant to Rule 12(b) of the Federal Rules of Civil Procedure

of the complaint filed by Plaintiff James Obenchain[1]. *See* (DE 25, 28). For the reasons that follow,

the undersigned **RECOMMENDS** that the Commissioner's Renewed Motion be **GRANTED**.

## BACKGROUND[2]

### A.    THE ALJ'S DECISION

Plaintiff filed an application pursuant to Title II of the Social Security Act on August 8,

2016, alleging disability beginning September 25, 2015 and seeking benefits. The Social Security

---

[1] James Obenchain is now deceased and his wife, Shelly Obenchain, has been substituted as the plaintiff. *See* (DE 24). Nevertheless, this report will continue to reference James Obenchain as the plaintiff, since he is the individual who filed the application for Social Security disability benefits under consideration.

[2] The facts in this section are taken from the allegations of the complaint as well as the documents from the administrative proceedings attached to the complaint and to the Commissioner's motion to dismiss. *See Tobey v. Chibucos*, 890 F.3d 634, 648–49 (7th Cir. 2018) (on a motion to dismiss, the court can consider documents attached to the complaint as well as documents attached to the motion that are subject to judicial notice); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (if a defendant factually challenges the basis for federal jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exits" (internal quotation marks and citation omitted)).

Administration ("SSA") denied Plaintiff's application initially on October 24, 2016 and upon reconsideration on January 12, 2017. On January 24, 2017, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ"). A hearing was held on December 14, 2017, at which Plaintiff appeared and testified. The ALJ who conducted the hearing issued a written decision on June 19, 2018, finding that Plaintiff was not disabled. Notice of the ALJ's unfavorable decision was mailed to Plaintiff the same day. *See* (DE 1 ¶¶ 14–18; DE 1-1).

### B.    THE SUPREME COURT'S DECISION IN *LUCIA v. SEC*

On June 21, 2018, two days after the ALJ issued his written decision, the Supreme Court decided *Lucia v. S.E.C.*, --- U.S. ---, 138 S. Ct. 2044 (2018). *Lucia* held that the appointment of Securities and Exchange Commission ("SEC") ALJs by lower level staff violated the Appointments Clause of the U.S. Constitution because those ALJs exercised "significant discretion" in carrying out their "important functions." *Id.* at 2053. Because SEC ALJs had not been so appointed, and because the plaintiff in *Lucia* had made a "timely challenge" by "contest[ing] the validity of [the ALJ's] appointment before the [SEC], and continued pressing that claim in the Court of Appeals and th[e] [Supreme] Court," the *Lucia* Court "held that the appropriate remedy … [was] a new hearing before a properly appointed official." *Id.* at 2055 (internal quotation marks and citations omitted).

Like SEC ALJs, Social Security ALJs were at the time of the *Lucia* decision also were appointed by lower level staff rather than the head of the agency. Anticipating that *Lucia*-type challenges would be raised by Social Security claimants, the Acting Commissioner of Social Security issued an order on July 16, 2018 ratifying the appointments of all Social Security ALJs, thereby foreclosing any future Appointments Clause challenges to ALJ decisions issued after that

date.[3] The SSA did not take any action at that time concerning ALJ decisions like the present one, which had been issued before the ratification order was entered.

### C.    PLAINTIFF'S REQUEST FOR REVIEW BY THE APPEALS COUNCIL

On August 15, 2018, Plaintiff filed a request with the SSA Appeals Council for review of the ALJ's unfavorable decision. (DE 14-1 at 33). Although *Lucia* had already been decided, Plaintiff did not raise an Appointments Clause challenge to the ALJ's decision in his request for review.[4] Seven months later, on March 15, 2019, the SSA issued SSR 19-1p to explain how the agency "will adjudicate cases pending at the Appeals Council in which the claimant has raised a timely challenge to the appointment" of an ALJ under the Appointments Clause in light of the Supreme Court's decision in *Lucia*.[5] The SSA stated in SSR 19-1p that it would grant a claimant's request for review based on an Appointments Clause challenge to a preratification ALJ decision if the claimant raised it either before the Appeals Council or previously at the ALJ level.[6] Plaintiff does not contend that he made any attempt to amend his then pending Appeals Council petition to add an Appointments Clause challenge either before or after the March 15, 2019 issuance of SSR 19-1p.

---

[3] *See* SSR 19-1p, 84 Fed. Reg. 9582–02 at 9583 & n.3, 2019 WL 1202036 (SSA Mar. 15, 2019) (citing Social Security Emergency Message (EM) 18033 REV 2, § B (available at: *https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM,* last visited June 23, 2022)).

[4] Plaintiff's request for Appeals Council review is not included in the current record. But Plaintiff does not dispute the Commissioner's contention that he did not raise an Appointments Clause challenge before the Appeals Council.

[5] SSR 19-1p, 84 Fed. Reg. 9582–02 at 9582, 2019 WL 1202036.

[6] *Id.* at 9583.

On July 29, 2019, the Appeals Council denied Plaintiff's request for review. (DE 1 ¶ 23; DE 1-2 at 1). The letter notifying Plaintiff of that decision instructed Plaintiff that if he disagreed with the Appeals Council's action, he could ask for court review by filing a civil action. (DE 1-2). The letter informed Plaintiff of the deadlines applicable to such an action, and, specifically, that he needed to file a district court action within 60 days of his receipt of the letter.[7] In addition, Plaintiff was informed that the SSA would assume he received the Appeals Council's letter within five days after the mailing date shown on the letter, unless Plaintiff provided evidence that he did not receive it in that time period.[8] The letter also informed Plaintiff that he could file a written request for additional time if needed. Plaintiff does not contend that he received the Appeals Council's letter more than five days after July 29, 2019, or that he requested additional time to file a civil action. As a result, the deadline for Plaintiff to have filed a civil action seeking judicial review of the ALJ's decision was October 2, 2019.

### D.    THE PRESENT COMPLAINT

Plaintiff filed the present action on April 19, 2020, more than six months after the October 2, 2019 deadline to seek judicial review under 42 U.S.C. § 405(g). The complaint does not claim entitlement to direct review of the ALJ's July 19, 2018 decision. Instead, the complaint mounts a collateral attack on the ALJ's decision, asserting it is a "nullity" as a result of the Supreme Court's

---

[7] *See* 42 U.S.C. § 405(g).

[8] The Commissioner has provided by regulation for an additional five days from the mailing date shown on the date of the Commissioner's final decision to be added to the 60 days allowed by 42 U.S.C. § 405(g). *See* 20 C.F.R. § 422.210(c). Thus, Social Security claimants "who seek judicial review of a final decision of the Commissioner ordinarily must sue within 65 days of the notice of that decision." *Weliever v. Saul,* 848 F. App'x 200, 202 (7th Cir. 2021).

decision in *Lucia,* and seeking a writ of mandamus[9] to require the Commissioner to afford Plaintiff

a new hearing before a properly appointed ALJ. *See* (DE 1, Prayer for Relief ¶ 1). In addition to

mandamus relief, the complaint also seeks a court order directing the Commissioner to file the

administrative record and to produce certain documents, as well as directing that briefing in this

matter proceed according to the requirements of the local rule applicable to actions for judicial

review under 42 U.S.C. § 405(g). *See* (DE 1, Prayer for Relief ¶¶ 2-4).

### E.    PROCEEDINGS BEFORE THIS COURT: ORIGINAL MOTION TO DISMISS AND ENTRY OF STAY

In lieu of filing the administrative record, the Commissioner filed an "Opposition To And

Motion To Dismiss Plaintiff's Complaint, amended on September 1, 2020 ("original motion"),

which sought dismissal of Plaintiff's complaint for "lack of subject matter jurisdiction" under both

42 U.S.C. § 405(g) and the mandamus statute, 28 U.S.C. § 1361. (DE 14 at 1). The

Commissioner's arguments for dismissal in the original motion relied heavily on Plaintiff's failure

to raise an Appointments Clause challenge during the administrative proceedings, which the

Commissioner asserted was a waiver or forfeiture under the principle known as issue exhaustion.[10]

*See* (DE 15 at 4-17).

---

[9] *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

[10] Issue exhaustion is distinct from, and not to be confused with, exhaustion of administrative remedies. *See Carr v. Saul*, --- U.S. ---, 141 S. Ct. 1352, 1358 n.2. (2021). Issue exhaustion refers to the rule that requires a party "to give the agency an opportunity to address an issue before seeking judicial review of that question." *Id.* at 1358. Exhaustion of administrative remedies, on the other hand, refers to the rule that a claimant must "proceed[ ] through each step of the SSA's administrative review scheme and receive[ ] a 'final decision' before seeking judicial review." *Id.* at 1358 n.2.

Whether issue exhaustion required a claimant to raise an Appointments Clause challenge to a preratification ALJ decision in the administrative proceedings was a contested question at the time the Commissioner filed her original motion. As the Commissioner pointed out in her memorandum in support of that motion, the Eighth and the Tenth Circuits had held that Appointments Clause challenges to SSA ALJs are forfeited if they are not raised during the administrative proceedings,[11] while the Third Circuit had held that the issue could be raised for the first time in the district court.[12] Shortly after the Commissioner filed that memorandum, the Sixth and Fourth Circuits issued decisions joining the Third Circuit,[13] creating a 3–2 circuit court split against imposing an issue exhaustion requirement. The Seventh Circuit, in the meantime, had not yet ruled on the issue, but was about to entertain two appeals in which it was raised.

Following the Commissioner's filing of the original motion, this Court entered an order asking the parties to weigh in on whether the case should be stayed pending a decision by the Seventh Circuit in the two appeals in which the issue exhaustion question had been raised. The parties diverged somewhat in their views regarding the necessity of a stay.[14] Nevertheless, following a hearing to discuss the parties' conflicting viewpoints, the Court ultimately entered a stay without objection from either side. *See* (DE 21). Thereafter, the Supreme Court granted

---

[11] *Davis v. Saul,* 963 F.3d 790 (8th Cir. 2020), *rev'd sub nom.*, *Carr*, 141 S. Ct. 1352; *Carr v. Comm'r, SSA*, 961 F.3d 1267 (10th Cir. 2020), *rev'd*, 141 S. Ct. 1352.

[12] *Cirko v. Comm'r of Soc. Sec.,* 948 F.3d 148 (3d Cir. 2020).

[13] *Ramsey v. Comm'r of Soc. Sec.,* 973 F.3d 537 (6th Cir. 2020); *Probst v. Saul,* 980 F.3d 1015 (4th Cir. 2020).

[14] The Commissioner argued that a ruling by the Seventh Circuit in favor of issue exhaustion would be dispositive of Plaintiff's right to relief, while Plaintiff contended that, because neither case before the Seventh Circuit involved a collateral proceeding seeking mandamus relief, any decision in those appeals would not affect this case.

certiorari on the issue exhaustion question, following which the Seventh Circuit entered a stay of the two appeals pending before it in which the issue had been raised.

### F.    THE SUPREME COURT'S DECISION IN *CARR v. SAUL*

On April 22, 2021, the Supreme Court resolved the circuit split on the issue exhaustion question when it ruled in *Carr v. Saul*, 141 S. Ct. 1352, that a Social Security claimant does *not* forfeit his or her Appointments Clause challenge by failing to raise the issue in the administrative proceedings. The Court based its holding on the nonadversarial nature of SSA proceedings and the absence of any SSA rule or regulation advising claimants of an issue exhaustion requirement. *Id.* at 1359–60.[15] Following the Supreme Court's ruling, the Seventh Circuit summarily ruled to the same effect, i.e., *no* issue exhaustion requirement applied to Appointments Clause challenges in Social Security cases. *Hekter v. Saul*, 2021 WL 5768688, at *1 (7th Cir. May 10, 2021).

### G.    THE COMMISSIONER'S RENEWED MOTION TO DISMISS

In light of the Seventh Circuit's decision in *Hekter*, the Court lifted the stay in this case on November 16, 2021, at which time the Commissioner withdrew her original motion. The Commissioner then filed the Renewed Motion and memorandum in support, and Plaintiff filed a response. No reply having been filed within the deadline provided in the local rules, the Commissioner's Renewed Motion is now ripe for report and recommendation.[16]

---

[15] The Supreme Court also found two other factors tipped the scales against imposing an issue exhaustion requirement: ALJs' lack of special expertise in constitutional challenges such as the Appointments Clause challenge, and claimants' inability to obtain redress for an Appointments Clause violation in the administrative proceedings. *Carr*, 141 S. Ct. at 1360–62.

[16] Prior to the Commissioner's filing of the Renewed Motion, the Court took note of Plaintiff's request in the complaint for a court order requiring the Commissioner to produce documents evidencing the appointment of the ALJ who decided Plaintiff's case, the Commissioner's ratification of that appointment, and the Commissioner's awareness of any problems with the ALJ's appointive status. The Court instructed the parties to meet and confer over whether it was necessary for that discovery to occur before a refiled motion to dismiss could be resolved. *See* (DE

## DISCUSSION

I.    **OTHER SIMILAR MANDAMUS CASES IN THIS DISTRICT.**

The issue in this case is whether a Social Security claimant who failed to seek judicial review of a final decision of the Commissioner can still challenge the Commissioner's denial of benefits through a separate proceeding seeking the issuance of a writ of mandamus to require the Commissioner to grant the claimant a new hearing on the ground that the first decision was rendered by an unconstitutionally appointed ALJ. This is the fourth case in this district (of which the undersigned is aware) that presents an Appointments Clause challenge in a Social Security case in the unique procedural posture of a collateral proceeding seeking mandamus relief. *See Robertson v. C'mmr,* No. 1:20-cv-415-MGG; *Ball v. Saul*, No. 1:20-cv-245-WCL; *Akins, o/b/o J.M.A. v. Comm'r of Soc. Sec. Admin*, No. 3:20-cv-564-HAB. As of the date this report was entered, *Robertson* was still pending, while *Ball* and *Akins* were resolved prior to the Supreme Court's decision in *Carr. See Ball v. Saul*, No. 1:20-cv-245-WCL, 2020 WL 6681417 (N.D. Ind. Nov. 12, 2020); *Akins, o/b/o J.M.A. v. Comm'r of Soc. Sec. Admin*, No. 3:20-cv-564-HAB, 2020 WL 5912368 (N.D. Ind. Oct. 6, 2020).

The claimants in *Ball* and *Akins* had filed a timely judicial review action under 42 U.S.C. § 405(g), but those actions had been dismissed for repeated failure to comply with a court order

---

24). The Commissioner reports that a meet and confer took place and that "the government's understanding" was that Plaintiff was "not seeking discovery." (DE 26 at 2 n.2). Plaintiff does not contest that he did not seek discovery prior to the briefing on the Renewed Motion, but his response to that motion continues to ask for "limited discovery in this case." (DE 27 at 11). For purposes of this report and recommendation, the Court assumes that the ALJ who decided Plaintiff's case was not properly appointed at the time of his decision, and therefore the requested discovery is not necessary to resolve the Commissioner's Renewed Motion. Further, if the recommendation in this report is adopted, Plaintiff's request for discovery would be moot.

(one without prejudice and one with).[17] The claimants then filed a second action seeking a writ of mandamus. In resolving the Commissioner's motion to dismiss, the courts in neither case specifically addressed the mandamus claim. Instead, Judge Lee in *Ball* granted the Commissioner's motion to dismiss on the basis of issue exhaustion, 2020 WL 6681417, at *2-3, while Judge Brady in *Akins* held that claim preclusion or res judicata barred the claimant from bringing a second action after her previous action for judicial review under § 405(g) was dismissed with prejudice, 2020 WL 5912368, at *3-4.[18]

This case is different from *Ball* and *Akins* in that Plaintiff never filed an action for judicial review under § 405(g) within the required time frame. Nevertheless, like the plaintiffs in those other cases, Plaintiff seeks to avoid his own procedural default that precludes him from obtaining judicial review under § 405(g). To this end, Plaintiff argues that his hearing was conducted by a "purported ALJ" whose decision was a "nullity," and that, as a result, there was no actual ALJ decision for which the Appeals Council could have denied review. *See* (DE 1 ¶¶ 19-24). According to Plaintiff, this means there was never a final decision of the SSA to trigger the 60–day deadline of 42 U.S.C. § 405(g), and he therefore can seek mandamus relief requiring the Commissioner to grant him a new hearing before a duly appointed ALJ. *See* (DE 27 at 9–10).

Similar arguments were made by the plaintiffs in both *Ball* and *Akins.* But in *Ball* the Commissioner successfully responded to those arguments by arguing that mandamus relief was precluded by the requirement of issue exhaustion, an argument now foreclosed by *Carr*. And,

---

[17] *See Ball,* 2020 WL 6681417, at *1 (failure to comply with court order to pay filing fee); *Akins,* 2020 WL 5912368, at *1 (failure to comply with court order to file opening brief after three missed deadlines).

[18] The plaintiffs in both cases filed appeals to the Seventh Circuit, which appeals were voluntarily dismissed following the Supreme Court's issuance of the *Carr* decision.

although the *Akins* court's reason for dismissal--claim preclusion--is pertinent to this case (as will be discussed later in this report), *Akins* involved a prior district court action, whereas this case does not.[19] Thus, neither *Ball* nor *Akins* provides definitive guidance to this Court for resolving the Commissioner's Renewed Motion. With this background in mind, the Court turns to the standard of review and the Commissioner's arguments for dismissal.

## II.    STANDARD OF REVIEW

### A.    RULE 12(b)(1)

The Commissioner appears to argue that the Court lacks subject matter jurisdiction over Plaintiff's complaint, but the legal basis for that argument is not clearly articulated. In particular, it is unclear whether the Commissioner contends the lack of subject matter jurisdiction applies only to a claim under 42 U.S.C. § 405(g), or applies to Plaintiff's claim for mandamus relief as well. The Commissioner's original motion asserted that dismissal was required for "lack of subject matter jurisdiction" under either § 405(g) or the mandamus statute. (DE 14 at 1). In her Renewed

---

[19] This distinction may not be dispositive, however, because claim preclusion or res judicata may apply to the final decision of an administrative agency as well. *See Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (quoting *United States v. Utah Constr. & Mining Co*., 384 U.S. 394, 422 (1966)); *see also Vargas v. Cook Cnty., Sheriff's Merit Bd.*, 952 F.3d 871, 876 n.1 (7th Cir. 2020) (where plaintiffs lost their challenge to disciplinary decisions of the state merit board and then failed to appeal, court states that lawsuits challenging the terminations on the ground that the merit board was unlawfully constituted at the time of the hearings were precluded by res judicata); RESTATEMENT (SECOND) OF JUDGMENTS § 83(1) (explaining that, in general, "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court"); *cf. Meredith v. Bowen,* 833 F.2d 650, 653 n.2 (7th Cir. 1987) ("As the district court correctly noted, Meredith would normally be precluded from relitigating the administrative determination that she was not entitled to disability benefits because she failed to seek review of the denial of her second application and that decision is res judicata." (citing *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981) ("An earlier administrative decision at any level in the adjudicative process may be final and therefore properly treated as preclusive of a subsequent claim either because the decision has been judicially affirmed or because administrative reconsideration, hearing, or review, *or judicial review* has not been timely sought.") (emphasis added))).

Motion, however, the Commissioner no longer refers to "subject matter jurisdiction," but does contend generally and without further explanation that "the complaint should be dismissed pursuant to Rule 12(b)(1) and/or Rule 12(b)(6)." (DE 26 at 2).[20]

"Recognizing [its] less than meticulous use of the term ['jurisdictional'] in the past," the Supreme Court "has endeavored in recent years to bring some discipline to the use of th[at] term." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks and citation omitted). "[T]ruly jurisdictional rules … govern a court's adjudicatory authority" and require a court "to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Id.* (internal quotation marks and citation omitted). "[N]onjurisdictional 'claim-processing rules,'" on the other hand, can be waived or forfeited. *Id.* "A rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" *Gonzalez,* 565 U.S. at 141-42 (quoting *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515 (2006)).

For the most part, the Commissioner's arguments in this case appear to confuse jurisdictional requirements with requirements for stating a claim for relief. *See Hironymous v. Bowen*, 800 F.2d 888, 891 n.1 (9th Cir. 1986) (stating that "[s]ome courts appear not to respect the distinction between jurisdictional and nonjurisdictional requirements," and citing *Lovallo v. Froehlke*, 468 F.2d 340, 344 n. 6 (2d Cir. 1972), as an example, wherein the court stated that, "[i]n reviewing a denial of a petition for mandamus, it is sometimes helpful to consider the merits before determining whether the jurisdictional requirements for mandamus have been met"). Nevertheless,

---

[20] The Commissioner's arguments in *Ball* and *Akins* suffered from a similar ambiguity regarding the applicable procedural rule under which the motion to dismiss was brought. *See Ball,* 2020 WL 6681417, at *1 (applying Rule 12(b)(1) because Commissioner sought dismissal for "lack of subject matter jurisdiction"); *Akins*, 2020 WL 5912368, at *2 (stating that the Commissioner's "repeated references" to the court's jurisdiction led the court to conclude that the motion to dismiss was brought under Rule 12(b)(1)).

the Court does not perceive any outcome determinative difference between applying Rule 12(b)(1) and applying Rule 12(b)(6). Therefore, the Court will conduct its analysis of the Commissioner's arguments under Rule 12(b)(6), while noting any jurisdictional issues if and when appropriate.

**B.     RULE 12(b)(6)**

When considering whether a complaint should be dismissed under Rule 12(b)(6) for failure to state a claim for relief, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in the plaintiff's favor. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). The "Federal Rules of Civil Procedure 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Hillesheim v. AndyMark, Inc.*, No. 1:19-cv-04919-SEB-MPB, 2020 WL 3642506, at *2 (S.D. Ind. July 6, 2020) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)). Nevertheless, "the claim asserted must still be legally cognizable. If the factual allegations of the complaint, taken as true, do not support a legally cognizable claim for relief, the Court will grant dismissal." *Id.* (internal quotation marks and citation omitted). "Dismissal under Rule 12(b)(6) is reserved for complaints that do not state legally cognizable claims, including the situation in which the plaintiff pleads himself out of court by making allegations sufficient to defeat the suit." *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 924 (7th Cir. 2007). Thus, if the allegations in the complaint "are not only insufficient, but affirmatively allege facts demonstrating that [the] plaintiff cannot prevail as a matter of law, the court will grant [the] defendant's motion to dismiss th[e] claim with prejudice." *Johnson v. Bankers Life & Cas. Co*., 973 F. Supp. 2d 950, 961 (W.D. Wis. 2013).

**III.     JUDICIAL REVIEW UNDER 42 U.S.C. § 405(g)**

As the Commissioner points out, judicial review of a final decision of the SSA is authorized by 42 U.S.C. § 405(g), which provides in relevant part as follows:

**(g) Judicial review**

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. …

42 U.S.C. § 405(g). The Commissioner argues that the complaint should be dismissed because the 60–day period for seeking judicial review under this provision expired before Plaintiff initiated this lawsuit.

The Commissioner's *non-jurisdictional* argument based on the 60-day period in § 405(g)[21] is correct. That is, Plaintiff does not dispute that (1) he applied for disability insurance benefits on August 8, 2016; (2) a hearing was held on that application before "[a] person purporting to be an ALJ" on December 14, 2017; (3) a decision was rendered denying Plaintiff disability benefits on June 19, 2018; and (4) "[t]he Appeals Council refused to review this purported ALJ decision on July 29, 2019." (DE 1, ¶¶ 14, 20, 21, 23[22]). This action was filed on April 19, 2020, more than six months after the ALJ's decision denying Plaintiff's application for benefits became final by the Appeal Council's denial of Plaintiff's request for review. While the Supreme Court has held that

---

[21] Any jurisdictional argument the Commissioner may be attempting to make based on the 60-day deadline in § 405(g) "is foreclosed by" the Supreme Court's decisions in *Weinberger v. Salfi,* 422 U.S. 749, 763-64 (1975), and *Mathews v. Eldridge*, 424 U.S. 319, 328 n. 9 (1976), which "declared that the 60–day requirement is not jurisdictional, but rather constitutes a period of limitations." *Bowen v. New York,* 476 U.S. 467, 478 (1986); *see Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 437 (2011) ("the deadline for obtaining review of Social Security benefits decisions in district court, 42 U.S.C. § 405(g), is not jurisdictional").

[22] The Court cites to the allegations of the complaint to show that Plaintiff does not dispute these facts. *See Alfreds v. Colvin*, 618 F. App'x 289, 290 (7th Cir. 2015) ("Although th[e] 60–day limit is not jurisdictional and ordinarily would be raised as an affirmative defense, district courts may rely on obvious affirmative defenses to dismiss complaints." (citations omitted)).

equitable tolling may apply to the Commissioner's statute of limitations defense, *Bowen*, 476 U.S. at 478-80, Plaintiff has waived any tolling argument he might have made by failing to raise it. *See Riley v. City of Kokomo, Ind. Hous. Auth.,* 909 F.3d 182, 190 (7th Cir. 2018). Accordingly, Plaintiff is precluded by the 60-day deadline from seeking judicial review under § 405(g) of the SSA's denial of his benefits application.

Despite the above, the Commissioner's arguments based on § 405(g) are largely beside the point insofar as dismissal of the complaint is concerned, because Plaintiff does not purport to bring a claim for judicial review of the ALJ's decision under that statute.[23] Instead, Plaintiff's complaint seeks relief under the mandamus statute, 28 U.S.C. § 1361. The Commissioner responds that the only statutory basis pursuant to which a Social Security claimant can obtain judicial relief from a final decision by the Commissioner is § 405(g). The Commissioner is correct that the Supreme Court held in *Weinberger v. Salfi* that a plaintiff cannot avoid the requirements of § 405(g) by alleging federal court jurisdiction under 28 U.S.C. § 1331. 422 U.S. at 756-62 (discussing the third sentence of 42 U.S.C. § 405(h), which states that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section

_____

[23] Notwithstanding Plaintiff's disavowal of a claim under § 405(g), several aspects of his complaint suggest he is seeking the equivalent of a judicial review action under that provision, such as his request for a court order directing the Commissioner to file the administrative record (as required by § 405(g)), and his request for another court order to enter a briefing schedule pursuant to Local Rule 7.1, which applies to actions for judicial review under § 405(g). The Court takes Plaintiff at his word, however, that he is not asserting a claim under § 405(g). Regardless of whether the issue implicates jurisdiction over Plaintiff's suit, his disavowal constitutes a waiver of any argument he could make for stating a claim under § 405(g). *See In re Littman,* 551 B.R. 355, 361 (N.D. Ill. 2015) (although "it is axiomatic that [n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, … the *proponent* of subject matter jurisdiction, as with any party that bears the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction" (emphasis in original) (citing *Travelers Pro. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) ("The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists[.]"), additional internal citations omitted)).

1331 or 1346 of Title 28 to recover on any claim arising under this subchapter"). The Commissioner argues that "[t]he remedy provided by section [4]05(g) is exclusive," such that a court is without subject matter jurisdiction over any action outside of that provision. (DE 26 at 4). At the same time (and in apparent contradiction), the Commissioner admits that, although "[t]he Supreme Court on four occasions has reserved judgment as to whether mandamus jurisdiction is available for claims arising under the Social Security Act," *Burnett v. Bowen*, 830 F.2d 731, 737 (7th Cir. 1987),[24] the Seventh Circuit has followed the lead of a number of other circuits in holding that "the mandamus statute provides jurisdiction in cases challenging the procedures used in administering Social Security benefits but unrelated to the merits." *Id.* (citing cases).

Plaintiff argues that his complaint seeks relief based on a procedural matter unrelated to the merits of his Social Security benefits application, namely, the unconstitutional appointment of the ALJ who decided his case. Therefore, he contends, this Court has subject matter jurisdiction under the mandamus statute. The Commissioner neither disputes that it is established law in this circuit that mandamus relief is possible outside of § 405(g),[25] nor makes any counter–argument to Plaintiff's characterization of his Appointments Clause challenge as being procedural in nature and unrelated to the merits of his benefits application. Accordingly, pursuant to *Burnett*, the Court has subject matter jurisdiction to consider Plaintiff's claim for mandamus relief.

---

[24] *See Heckler v. Ringer,* 466 U.S. 602, 616-17 (1984); *Califano v. Yamasaki*, 442 U.S. 682, 698 (1979); *Eldridge*, 424 U.S. at 332 n. 12; *Norton v. Mathews*, 427 U.S. 524, 528–33 (1976); *see also Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456 n.3 (1999).

[25] *See Michael Reese Hosp. & Med. Ctr. v. Thompson,* 427 F.3d 436, 441 (7th Cir. 2005) ("In *Burnett …,* we joined a number of other circuits in concluding that mandamus relief is available for Medicare claims that are procedural rather than substantive in nature."); *but cf. Jackson v. Shalala,* 51 F.3d 275 (Table), 1995 WL 123124, at * 2 (7th Cir. 1995) (unpublished) ("*Assuming* that 42 U.S.C. § 405(h) does not bar mandamus jurisdiction altogether …." (citing *Heckler* and *Burnett*) (emphasis added)).

## V.    MANDAMUS RELIEF

"A writ of mandamus '[i]s intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Burnett*, 830 F.2d at 738-39 (quoting *Heckler,* 466 U.S. at 616); *see also Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242, 1251 (7th Cir. 1985) (defendant must have a "plainly defined and peremptory duty … to do the act in question"). "In *Americana Healthcare* [*Corp. v. Schweiker*, 688 F.2d 1072, 1084 (7th Cir. 1982)], th[e] [Seventh Circuit] held that the mandamus remedy is only available under *exceptional* circumstances of *clear illegality*. When the performance of official duty calls for a construction of governing law, the [federal] officer's interpretation will not be disturbed by a writ of mandamus unless it is clearly wrong and his official action is arbitrary and capricious. A mere mistake of law or an erroneous factual finding is not the type of clear-cut abuse of discretion or usurpation of power necessary for [the Court's] use of the extraordinary remedy of mandamus." *Homewood Prof. Care Ctr., Ltd.,* 764 F.2d at 1251 (quoting *Americana Healthcare Corp.*) (emphasis added by court)).[26]

The Seventh Circuit has summed up the requirements for a writ of mandamus as follows: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available." *Burnett,* 830 F.2d at 739 (quoting *Homewood Prof. Care Ctr.*, *Ltd.*, 764 F.2d at 1251 (quoting *Americana*

---

[26] *See also Consolidated Edison Co. of N.Y., Inc. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002) ("[M]andamus is inappropriate except where a public official has violated a 'ministerial' duty. Such a duty must be 'so plainly prescribed as to be free from doubt and equivalent to a positive command.... [W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus.'" (quoting *Wilbur v. United States*, 281 U.S. 206, 218–219 (1930)).

*Healthcare Corp.*, 688 F.2d at 1084)). The Commissioner's only argument for dismissal of Plaintiff's claim for mandamus relief is that Plaintiff cannot show the third element, that no other adequate remedy is available. As discussed below, the Court recommends that Plaintiff's mandamus petition be dismissed because, as a matter of law, Plaintiff has not shown, and cannot show, that any of the three elements required for mandamus relief exist here.

### A.    THE REQUIREMENT OF NO OTHER ADEQUATE REMEDY

The Commissioner argues that Plaintiff is not entitled to mandamus relief because he had an adequate remedy for his Appointments Clause challenge, that remedy being a direct appeal under § 405(g). *See* (DE 26 at 8). Generally speaking, the requirement for mandamus relief that there be no other adequate remedy available "requires the exhaustion of any adequate administrative remedies before a court may issue mandamus." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011) (citing *Ringer*, 466 U.S. at 616–17 (finding an adequate remedy under § 405(g) to challenge all aspects of the Secretary's denial)). "An alternative remedy, including an administrative remedy, is adequate if it is capable of affording full relief as to the very subject matter in question." *Id.* (internal quotation marks and citation omitted).

As the Commissioner correctly points out, Plaintiff could have raised his Appointments Clause challenge by filing an action for judicial review under 42 U.S.C. § 405(g) following the SSA Appeals Council's denial of review. He would have been able to raise the Appointments Clause challenge in that judicial review action, notwithstanding his failure to raise the issue during the administrative proceedings, by virtue of the Supreme Court's decision in *Carr*. The requirement for mandamus relief of no other available remedy is not satisfied merely because Plaintiff is now precluded by the statute of limitations from filing an action for judicial review under 42 U.S.C. § 405(g). Under normal administrative exhaustion principles, if a plaintiff is

foreclosed from further exhaustion due to a deadline having passed, the court does not *excuse* the plaintiff from having to exhaust his administrative remedies; if "it is too late to exhaust," the court *dismisses the lawsuit with prejudice* for failure to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (citing cases). The same underlying principle applies in the context of a mandamus petition. As the Supreme Court has stated, the condition that "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires … [is] designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004); *see also Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27–28 (1943) ("Ordinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed."). Plaintiff's complaint inappropriately seeks to use the Court's mandamus jurisdiction as a substitute route for judicial review of a final decision of the SSA under § 405(g).[27]

It might seem unfair to Plaintiff that other claimants who had their benefits claims heard by an unconstitutionally appointed ALJ might receive new hearings when he will not. But Plaintiff chose not to appeal and he "cannot be relieved of [his] choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong.... There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackerman v. United States*, 340 U.S. 193, 198 (1950); *see also Norgaard v. DePuy Orthopaedics, Inc.,* 121 F.3d 1074,

---

[27] *See, e.g., In re Fermin,* 859 F. App'x 904, 905 (Fed. Cir. 2021) ("Because Mr. Fermin here failed to seek review of the Veterans Court's order by way of a timely filed direct appeal, we must deny his request for this extraordinary relief."); *Davis v. McDonough*, No. 21-7631, 2021 WL 6048933, at *2 (Vet. App. Dec. 21, 2021) ("Petitioner's current attempt to undo the June 2018 rating decision by filing a petition with this Court seeks to bypass the appeals process, and thus cannot be the basis for entitlement to a writ."); *In re Pikulin*, 243 F.3d 565 (Table), 2000 WL 1717166, at *2 (Fed. Cir. 2000) (mandamus denied where petitioner "had sixty days after the entry of judgment" to file an appeal and "did not do so").

1077 (7th Cir. 1997) ("Litigants who want to take advantage of the possibility that the law may evolve—or who seek to precipitate legal change—must press their positions while they have the chance."). In short, Plaintiff's failure to file a timely action for judicial review is not an "exceptional circumstance" warranting issuance of the writ, as Plaintiff had an adequate means for obtaining a remedy for the ALJ's unconstitutional appointment but simply failed to take it.

### B.    THE REQUIREMENTS OF A CLEAR RIGHT AND NONDISCRETIONARY DUTY

While the above finding that Plaintiff had another adequate remedy available to him is sufficient by itself to deny Plaintiff's mandamus petition, the Court also will examine the other two requirements for a writ of mandamus to issue. Plaintiff argues that the Supreme Court's decisions in *Lucia* and *Carr* establish that he has a clear right to a new hearing before a constitutionally appointed ALJ and that the Commissioner has a nondiscretionary duty to give him one. But in focusing on the holding of *Lucia* to argue he has a clear right to a constitutionally appointed ALJ, Plaintiff ignores the timing question raised in this case. And in arguing that the Commissioner has a nondiscretionary duty to provide him a new hearing, Plaintiff improperly broadens the scope of *Carr* beyond what the Supreme Court held.

The Supreme Court's decision in *Pittston Coal Group v. Sebben*, 488 U.S. 105 (1988), is instructive on why *Lucia* and *Carr* are not dispositive of whether Plaintiff can satisfy the required elements for mandamus relief of a clear right and nondiscretionary duty. In *Sebben*, unsuccessful black lung claimants sought a ruling that the Secretary of Labor's regulations governing presumptive entitlement to benefits were more restrictive than permitted by the Black Lung Benefits Reform Act ("BLBRA"). *Id.* at 108-13. The BLBRA provided that new, less restrictive interim standards were to "be applied to cases filed or pending during the interim period, but also that claims previously denied would, upon the claimant's request, be reopened and readjudicated

under the interim standards." *Id.* at 110. The Supreme Court held that the Secretary violated the statute by applying a more restrictive standard than called for by the statute. *Id.* at 121. Nevertheless, the Court reversed the Eighth Circuit's remand order for a subclass of claimants who sought mandamus relief because they had "fail[ed] to pursue administrative remedies or petition for judicial review in a timely manner." *Id.* In words directly applicable here, the Court held that, to succeed on their mandamus claim, the claimants in question needed "to establish not only a duty to apply less restrictive criteria than those [applied by the Secretary of Labor], but *also a duty to reopen the final determinations*." *Id.* at 122 (emphasis added).

The Court explained further that there was "*not even a colorable basis* for the contention that Congress has imposed a duty to reconsider finally determined claims." *Id.* (emphasis added). The Court said this was true even with respect to the claimants in the subclass who fell within the statutory provision that required the Secretary to reopen claims for readjudication under the new standard:

> [A] basis for reopening can be found only if one interprets [the statutory requirement to readjudicate] to override the principle of res judicata not just once but perpetually, requiring readjudication and re-readjudication (despite the normal rules of finality) until the Secretary finally gets it right. … This is not the way the law works. … Assuming [the claimants] are correct that these new standards would have entitled them to benefits, they would have been vindicated if they had sought judicial review; they chose instead to accept incorrect adjudication. They are in no different position from any claimant who seeks to avoid the bar of res judicata on the ground that the decision was wrong.

*Id.* at 122-23.

As the Sixth Circuit has explained, *Sebben* stands for the proposition that "the writ of mandamus c[an] not be used to force [an administrative agency] to reopen a case that had become

final, even if incorrectly decided." *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 955 (6th Cir. 1999).

> The writ of mandamus pursuant to 28 U.S.C. § 1631 is an extraordinary remedy and will issue only to compel the performance of a clear nondiscretionary duty. Clearly, [an agency] has no clear nondiscretionary duty to allow claims to be serially readjudicated after the time for administrative remedies and judicial review has passed. If it did, then no decision of the [agency] would ever be final. An aggrieved party could simply petition for mandamus and allege a breach of the [agency's] duty to adjudicate the case correctly, no matter how untimely the petition. No rational system of adjudication would permit this.

*Id.* (internal quotation marks and citations omitted).

In other words, the salient question here is not whether *Lucia* established a clear right to a constitutionally appointed ALJ, but whether Plaintiff has a clear right to raise the unconstitutional appointment of the ALJ who issued the decision denying his benefits application *in a collateral proceeding* filed after the ALJ's decision had already become *final.* Plaintiff has not argued or shown that he has such a clear right. Similarly, the salient question is not whether the Commissioner has a nondiscretionary duty to provide Plaintiff with a new hearing before a properly appointed ALJ had Plaintiff raised the appointments issue in a direct appeal, as the plaintiffs in *Carr* had, but whether the Commissioner has a nondiscretionary duty to do so when the claimant fails to appeal the final decision against him, as Plaintiff has done. Plaintiff has not argued or shown that the Commissioner has such a duty. *See, e.g., Michael Reese Hosp. & Med. Ctr.,* 427 F.3d at 445 ("There was no non-discretionary statutory requirement that the intermediary again reopen the cost reports to afford the relief Michael Reese could have obtained by simply pursuing the appeals in the first place."); *Johnson v. Shalala*, 2 F.3d 918, 924–25 (9th Cir. 1993) ("The Secretary does not owe a similar duty to pay retroactive benefits or to reopen cases that have lapsed. … The plaintiffs' right to appeal the Secretary's determination lapsed after sixty days. To

succeed, the plaintiffs had to establish not only a duty to exclude in-kind loans from income, but a duty to reopen the final determinations." (internal quotation marks and citation omitted)).

Plaintiff has not met his burden of showing mandamus relief is possible here merely by citing to *Lucia* and *Carr*, as he has done, both of which involved a timely appeal in which the appointments clause challenge was raised. Indeed, the Third Circuit's decision in *Cirko,* which foreshadowed the Supreme Court's decision in *Carr*, implicitly rejects any argument Plaintiff might make that a ruling in his favor on issue exhaustion means he has a clear right to raise his Appointments Clause challenge through a mandamus petition. There, the court rejected the Commissioner's "floodgates" argument that "without an [issue] exhaustion requirement, 'every disappointed claimant'" in the "493,000 appealable dispositions [issued by SSA ALJs] in fiscal year 2018 … 'could obtain a do-over before a new ALJ simply by raising a *Lucia* claim in district court.'" *Cirko*, 948 F.3d at 159. Stating that "we deal in facts, not hyperbole," the Third Circuit said "the purported flood is actually a trickle," because "[u]nder the applicable procedural rules, claimants must appeal the Appeals Council's decision to the District Court within sixty days … and *Lucia* was decided more than a year ago," which "means every claimant whose benefits were denied prior to *Lucia* has long since either filed an appeal in district court *or become time-barred from doing so*." *Id.* (emphasis added); *see also Probst,* 980 F.3d at 1024-25 (same); *Ramsey,* 973 F.3d at 546-47 & n. 5 (stressing the "narrow[ness]" of the court's holding that issue exhaustion was not required, and indirectly suggesting it did not mean final decisions of SSA ALJs could be reopened for purposes of entertaining an Appointments Clause challenge).[28]

---

[28] Even Plaintiff recognizes there must be some timeliness rule that would apply to a Social Security claimant who wished to raise an Appointment Clause challenge; for instance, a claimant could not seek a writ of mandamus demanding a new hearing based on an unconstitutionally appointed ALJ *twenty years* after the *Carr* decision. Plaintiff argues, however, that the applicable time limit is found through the application of the common law laches doctrine. While the Court

Plaintiff tries to avoid principles of finality by arguing that there was no ALJ decision to become final, only a "purported decision (a non-decision because such person was not an ALJ) which purported to deny disability benefits." (DE 1 ¶ 21). But he cites no authority for the implied premise of this argument that, because his mandamus petition seeks relief from a final judgment based on a change in law regarding the constitutional Appointments Clause (as opposed to, for instance as in *Sebben*, a change in law regarding decisional standards), finality principles do not apply. As the Supreme Court has said, Appointments Clause challenges fall "in the category of nonjurisdictional structural objections." *Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 878-79 (1991) (citing *Glidden Co. v. Zdanok,* 370 U.S. 530, 535-536 (1962)). Nevertheless, Plaintiff's entire complaint is based on the mistaken premise that the ALJ's decision is a nullity because of the nonjurisdictional Appointments Clause violation. Plaintiff is no more entitled to a new hearing so that his benefits application can be heard by a constitutionally appointed ALJ than the *Sebben* claimants who failed to appeal the administrative decisions of the Secretary of Labor were entitled to a new hearing so that the correct standards could be applied to their claims.[29]

---

finds no support for applying Plaintiff's laches theory in place of normal rules of finality, *even under a laches theory*, the Commissioner would *not* have a nondiscretionary duty to grant Plaintiff a new hearing; any duty the Commissioner would have to provide a new hearing would be contingent on a laches finding. *See Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003) (laches applies when, in the judgment of a judge or jury, there has not been unreasonable delay by the plaintiff or prejudice to the defendant).

[29] The ALJ's decision in this case is merely voidable, not void ab initio. In other words, it is not––to use Plaintiff's terminology—a "nullity." While Plaintiff's failure to timely seek judicial review means the decision finally determining his benefits application was issued by an unconstitutionally appointed ALJ, it is not unheard of for a decision by a public official later determined to be improperly in office to be nonetheless upheld as valid and enforceable. The common law *de facto* officer doctrine applies in that situation to "confer[ ] validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). "The *de facto* doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could

In sum, under *Sebben* and principles of finality, Plaintiff does not have a clear right to relief from the Commissioner's denial of his benefits application based on the holdings in *Lucia* and *Carr*, both of which involved direct, timely-filed appeals. Nor does the Commissioner have a nondiscretionary duty to grant Plaintiff a new hearing on his Social Security benefits application given the procedural posture of a final decision by the Commissioner with no timely action for

---

be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Id.* at 180-81 (quoting 63A AM. JUR. 2D, Public Officers and Employees § 578, pp. 1080–1081 (1984) (footnote omitted)). The Supreme Court has said that the *de facto* officer doctrine generally should not be applied where the plaintiff has made "a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case," because such a plaintiff is "entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred," reasoning that "[a]ny other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Id.* at 182-83. But Plaintiff has not raised a timely challenge, so the decision of the ALJ can be upheld as *de facto* valid, notwithstanding the constitutional defect in his appointment. *See, e.g., Buckley v. Valeo, 4*24 U.S. 1, 142 (1976) (where appointments to Federal Election Commission were held invalid under the Constitution, Court nevertheless concludes that the Commission's administrative actions and determinations to date could be upheld as "*de facto*" valid); *Aurelius Invest., LLC v. Puerto Rico,* 915 F.3d 838, 862-63 (1st Cir. 2019) (after finding that members of Financial Oversight and Management Board for Puerto Rico had been appointed in violation of the Appointments Clause, court upholds past decisions of the board by applying the *de facto* officer doctrine); *Levine v. United States,* 221 F.3d 941, 944 n. 7 (7th Cir. 2000) (because residency requirement for Assistant United States Attorney "concerns a matter of government administration, the non-resident AUSA was a *de facto* officer, and [was] entitled to continue in the office until it is judicially declared by a competent tribunal, in a proceeding for that purpose, that he had no right to it" (internal quotation marks and citation omitted)); *Iowa Farm Bureau Fed'n v. Env't. Protection Comm'n,* 850 N.W.2d 403 (Iowa 2014) (applying *de facto* officer doctrine to hold that a rule adopted by a state commission was not invalid even though a member who participated in the voting on the rule was not actually qualified to serve on the commission because she had lost her status as a state elector); *Marine Forests Soc'y v. Cal. Coastal Comm'n*, 36 Cal. 4th 1, 54-57, 113 P.3d 1062, 1093-96 (2005) (applying the *de facto* officer doctrine to upholding prior decisions of a state commission notwithstanding that the appointment of the commissioners who participated in the decisions were vulnerable to constitutional challenge); *Vroman v. City of Soldotna*, 111 P.3d 343, 349 (Alaska 2005) ("Because Cashman exercised colorable authority within the scope of the office  and Vroman gives no reason to believe that his original arbitration was unfair or that a second arbitration would produce a different outcome, we apply the *de facto* officer doctrine and uphold the validity of the board's determination").

judicial review of that decision having been filed. "[M]andamus does not create or expand duties, but merely enforces clear, non-discretionary duties already in existence." *Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 768. Mandamus relief here is foreclosed because "there is no 'clear right' to the relief sought, no 'exceptional circumstances of clear illegality,' no 'clearly wrong' interpretation of governing law, and no 'plainly defined and peremptory duty' to give [Plaintiff] a [new] hearing [before a constitutionally appointed ALJ]." *Homewood Prof. Care Ctr., Ltd.,* 764 F.2d at 1251.

## CONCLUSION

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that the Commissioner's Renewed Motion to Dismiss [**DE 25**] be **GRANTED**.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.,* 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 24th day of June, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT